UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC MATTHEW CUR,

                            Plaintiff,

v.                                                                     CASE # 19-cv-01039

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER          CORINNE MARIE
  Counsel for Plaintiff                               MANFREDI, ESQ.
6000 North Bailey Ave                                KENNETH R. HILLER, ESQ.
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   NICOL FITZHUGH, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

record is **DENIED**, the defendant's motion for judgment on the administrative record is

**GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on November 4, 1974 and has a high school education. (Tr. 162, 166). Generally, plaintiff's alleged disability consists of schizoaffective disorder with psychotic features, depression, and anxiety. (Tr. 165). His alleged onset date of disability is August 17, 2016. (Tr. 162). His date last insured is June 30, 2022. (Tr. 17).

### B.      Procedural History

On November 20, 2016, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act. (Tr. 146). On March 20, 2017, plaintiff also applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 153). Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On September 19, 2018, plaintiff appeared before the ALJ, Rosanne M. Dummer. (Tr. 33-57). On October 11, 2018, ALJ Dummer issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-28). On June 11, 2019, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Thereafter, plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2.  The claimant has not engaged in substantial gainful activity since August 17, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3.  The claimant has the following severe impairments: schizoaffective disorder and obesity. (20 CFR 44.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant could lift/carry 50 pounds occasionally and 20 pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. He should avoid work hazards (i.e., ladders, scaffolds, and work at unprotected heights). Secondary to mental impairments, the claimant could understand, remember and carry out simple, routine, repetitive tasks, commensurate with unskilled tasks. He could sustain attention and concentration for at least two-hour segments of time in an eight-hour day. The claimant could tolerate brief and superficial work-related, task-oriented contact with coworkers and supervisors and occasional brief and superficial contact with the public. He could adapt to changes in the workplace for simple, routine, repetitive unskilled work. He should avoid fast paced and high production goal work. (i.e., Ex. 16F/9-10).

6.  The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 4, 1974 and was ages 41-43, which is defined as a younger individual, on the alleged disability onset date through the date of this decision (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2016 through the date of his decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-28).

## II.       THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.       Plaintiff's Arguments

Plaintiff generally argues the ALJ's decision is not supported by substantial evidence and that the RFC is a product of the ALJ's lay judgment. (Dkt. No. 8 at 15). Specifically, plaintiff argues the ALJ erred by relying on the stale opinion of the consultative examiner and the opinion from a non-examining medical expert. (*Id.*).

### B.       Defendant's Arguments

In response, defendant argues the ALJ appropriately considered and weighed the differing medical opinions in the context of the overall record. (Dkt. No. 11 at 14).

## III.      RELEVANT LEGAL STANDARD

### A.       Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Opinion from Consultative Examiner

On December 30, 2016, consultative psychological examiner Dr. Ransom indicated that plaintiff's schizoaffective disorder was in remission with medication and recommended that he continue with his current psychiatric services with a good prognosis. (Tr. 21, 450). During the examination, plaintiff had normal eye contact and motor behavior with neutral mood and full range of affect appropriate in both thought and speech; his thought processes showed no evidence of hallucinations, delusions, or paranoia; his attention, concentration, and memory were intact; and he had good insight and judgment. (Tr. 21, 449-50). As stated by the ALJ in her decision, Dr. Ransom opined that plaintiff showed no limitation in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks, performing complex tasks, relating adequately with others, and appropriately dealing with stress. (Tr. 24, 450).

ALJ Dummer stated that she accorded significant weight to Dr. Ransom's opinion, properly noting its consistency with medical expert Dr. Kalb's statement that plaintiff did well when he was compliant with medication. (Tr. 24, 450, 731). It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *See, e.g., Trepanier v. Comm'r of Soc.*

*Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (substantial evidence supported ALJ's RFC finding; ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute such substantial evidence."); *Dennis v. Berryhill*, No. 6:16-CV-6750-MAT, 2018 WL 488942, at *6 (W.D.N.Y. Jan. 19, 2018) (consultative psychological examiner's opinion "also provides substantial evidence for the ALJ's RFC finding.").

Plaintiff argues the opinion was stale because there were additional medical records after the examination and therefore the opinion did not constitute substantial evidence. (Dkt. No. 8 at 17). Notably, a medical opinion is not rendered obsolete merely due to the passage of time. *See, e.g.*, *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 910 (W.D.N.Y. 2018) ("However, a medical opinion is not stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole."). Further, while medical opinions based on an incomplete medical record may not be substantial evidence, opinions supported by substantially similar findings in treatment notes may constitute substantial evidence. *Camille v. Colvin,* No. 14–CV–6155 EAW, 104 F.Supp.3d 329, 343–44, 2015 WL 2381030, at *13 (W.D.N.Y. May 19, 2015).

The ALJ thoroughly discussed the subsequent medical evidence, such as records that showed improvement and a transition to a lower level of care following his receipt of disability retirement which eased his financial stressors. (Tr. 16-26). *See, e.g., Bamberg v. Comm'r of Soc. Sec.*, No. 18-CV-00337-DB, 2019 WL 5618418, at *5 (W.D.N.Y. Oct. 31, 2019) ("In this case, the ALJ discussed the subsequent medical evidence in detail, and there is no indication that any later-received evidence 'raise[s] doubts as to the reliability of [the consultative examining physician's] opinion.'") (quoting *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2012))

(internal record citation omitted). Clearly the ALJ did not rely on the findings of no limitations by Dr. Ransom as she found various mental limitations in the RFC.  The ALJ found greater limitations than Dr. Ransom opined which is permitted. *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").

Plaintiff also argues Dr. Ransom's report is stale because his condition deteriorated significantly after the consultative examination and cites to examples from medical appointments from April 2017 to March 2018 (Dkt. No. 8 at 17-18). However, the ALJ recognized plaintiff had brief hospitalizations in June and July 2016 in the in the context of medication noncompliance, and that he thereafter continued his medication regimen of Lithium, Seroquel, and monthly Invega injections for years, suggesting that the treatment was appropriate and beneficial. (Tr. 25, 236-37, 249-50, 465-647, 679-725). Additionally, the ALJ observed, following plaintiff's receipt of disability retirement in early 2018 and coinciding improvement in his anxiety and depressive symptoms given his financial security, the frequency of his individual therapy sessions with therapist Ms. Glynn was decreased. (Tr. 25, 625, 635, 646-47, 699-700). By May 2018, progress notes indicated that plaintiff demonstrated stable mental health symptoms for over six months and that he was transitioned to a lower level of care as he had gained maximum benefit from counseling, and he confirmed at the September 2018 hearing that he no longer received therapy. (Tr. 21-22, 25, 41, 699-700). The ALJ had both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); see *Cage v.*

*Comm'r of Soc. Sec*., 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Here, the ALJ appropriately considered Dr. Ransom's opinion in the context of the overall record, including the evidence that was generated and submitted after the consultative examination.

Although there were subsequent medical statements from Dr. Willis and Ms. Glynn, it was within the ALJ's discretion to resolve evidentiary conflicts in the record, including between and amongst the medical opinions. *See, e.g., Heaman v. Berryhill,* 65 F. App'x 498, 500 (2d Cir. 2019) ("While the ALJ is not 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion,' *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000), the ALJ may 'choose between properly submitted medical opinions,' *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), including the report of a consultative physician, *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)."). On January 30, 2017, social worker Ms. Glynn opined plaintiff would decompensate under the pressure of performing substantial gainful activity. (Tr. 478). On June 5, 2017, Dr. Willis stated plaintiff is disabled by his mental illness, and that he would not be able to function at the level of his past work as an accountant. (Tr. 529). Shortly thereafter, on July 3, 2017, Dr. Willis opined that plaintiff's degree of disability appeared to be complete and that he could not sign off on a release for work. (Tr. 542). ALJ Dummer stated that she had carefully considered the above statements, in addition to those by sources Dr. Sahaf and Dr. Reichert, but explained that she afforded the assessments minimal weight. (Tr. 25). The ALJ appropriately concluded that the evidence was inconsistent with work-precluding limitations for all work. (Tr. 24-25). *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("We will not give any special significance to the source

of an opinion on issues reserved to the Commissioner"). Plaintiff does not allege any error by the

ALJ as it pertains to weighing these opinions, so it is unclear how those opinions are inconsistent

with Dr. Ransom's opinion, rendering it stale.

ALJ Dummer also properly considered the opinion of Dr. Butensky, the State agency

psychological consultant who reviewed plaintiff's file in January 2017, when formulating the

plaintiff's RFC. (Tr. 24, 62-67). *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (ALJs are to

consider State agency consultants' opinions because "our Federal or State agency medical or

psychological consultants are highly qualified and experts in Social Security disability

evaluation."). As the ALJ observed, based on Dr. Ransom's consultative examination report and

the available objective evidence, Dr. Butensky indicated that plaintiff had moderate limitations in

numerous areas of mental functioning. (Tr. 24, 65-66). The ALJ also noted Dr. Butensky explained

in the narrative portion of his assessment that plaintiff had improved with treatment and appeared

capable of performing complex and simple job tasks. (Tr. 24, 64). Dr. Butensky also stated:

> Plaintiff had mild to moderate limitations in his ability to sustain attention and
> concentration, adapt to changes in a routine work setting, and interact appropriately with
> coworkers and supervisors (Tr. 64). Plaintiff's ability to deal with coworkers and the public
> would be somewhat reduced, but adequate to handle brief and superficial contact; he also
> indicated that plaintiff's ability to tolerate and respond appropriately to supervision would
> be similarly reduced, but was adequate to handle ordinary levels of supervision in the
> customary work setting (Tr. 24, 66).

The ALJ permissibly accorded some weight, which plaintiff does not argue was an error. (Tr. 24,

64-57). *See, e.g., Frye ex rel. A.O. v. Astrue,* 485 F. App'x 484, 487 (2d Cir. 2012) ("The report

of a State agency medical consultant constitutes expert opinion evidence which can be given

weight if supported by medical evidence in the record.").

**B.  Medical Expert Opinion**

10

When formulating the plaintiff's RFC, the ALJ considered the August 2018 opinion of medical expert Dr. Kalb in assessing mental limitations as part of the RFC. (Tr. 25, 727-736). Dr. Kalb opined the following after reviewing the evidence of record at the time:

> Plaintiff had no limitation in the ability to understand, remember, and carry out instructions; moderate limitation in the ability to interact with others; and mild limitation in the ability to respond appropriately to changes in the routine work setting. (Tr. 25, 734-35).

ALJ Dummer also took into account Dr. Kalb's narrative statement that, due to past episodes of showing and verbalizing odd and grandiose behavior as a result of his schizoaffective disorder, "it would be better for [Plaintiff] to have infrequent contact with the general public and task-focused contact with his supervisors and co-workers". (Tr. 25, 732). The ALJ accorded significant weight to the opinion of Dr. Kalb as a medical expert recognized by the Commissioner and whose opinion was well-reasoned and consistent with the overall record. (Tr. 25).

Plaintiff disingenuously argues that the ALJ erred in failing to obtain a more recent medical opinion yet suggests the opinion from the medical expert, solicited less than a month before the hearing, should not be relied upon. (Dkt. No. 8 at 20-21). An ALJ may properly request and consider the opinion of a medical advisor on the nature and severity of a claimant's alleged impairments. *See* 20 C.F.R. 404.1513a(b)(2), 416.913a(b)(2) ("Administrative law judges may also ask for medical evidence from expert medical sources. Administrative law judges will consider this evidence under [the medical opinion evaluation regulation applicable to the claimant's DIB or SSI claim based on the application filing date] as appropriate."). Dr. Kalb thoroughly documented medical evidence showing intact attention and concentration with the ability to attend and maintain focus despite alleged problems with concentrating and focusing. (Tr. 19, 732). As noted by the ALJ, Dr. Kalb observed that plaintiff's problems with distractibility and

disorganization were contemporaneous with stress over financial strain as he was working on the disability process. (Tr. 19, 732).

ALJ Dummer prudently also acknowledged that Dr. Kalb did not see some records from Dr. Sahef and Niagara County Mental Health, as they were received after her review. (Tr. 25) The ALJ explained that she had carefully considered the subsequently received records and they appeared to provide duplicative and cumulative information and would not alter Dr. Kalb's report or the outcome of this case. (Tr. 25). The ALJ found Dr. Kalb's opinions were well-reasoned and consistent with the overall record evidence, and appropriately accorded great weight in assessing work-related limitations as part of plaintiff's RFC. (Tr. 25, 727-36). *See, e.g., Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965 (MAT), 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018) (rejecting argument that the ALJ erred in according significant weight to the opinions of the medical experts because they did not personally examine the claimant: "However, an ALJ is free to give great weight to the opinion of a non-examining medical expert as long as their opinions are supported by substantial evidence.") (internal quotation, citation omitted).

The purported error that the ALJ used lay judgment to assess plaintiff's RFC because of the lack of an updated examining opinion is unavailing. The regulations require the ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," and further explain that such evidence includes objective medical evidence (*i.e.,* medical signs or laboratory findings), medical opinions, medical history, clinical findings, prescribed treatment, and the claimant's own descriptions of his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). An RFC does not solely require medical opinion evidence, specifically from an updated examining medical source. Here, and consistent with her obligations under the regulations governing the formulation of plaintiff's RFC, ALJ

Dummer expressly stated that she had based the RFC finding on the totality of the evidence. (Tr. 26). *Foley v. Comm'r of Soc. Sec.,* No. 1:18-CV-00512 EAW, 2019 WL 4386046, at *7 (W.D.N.Y. Sept. 13, 2019) ("Simply because the ALJ afforded no single opinion controlling weight does not mean ... that [ ]he substituted [his] own expertise of the medical proof for medical opinion."). Substantial evidence supports the ALJ's RFC and plaintiff failed to meet his burden to prove medical impairments with limitations greater than found by the ALJ.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No.8) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

    **GRANTED**.

Dated: November 4, 2020                 *J. Gregory Wehrman*
Rochester, New York                HON. J. Gregory Wehrman
                             United States Magistrate Judge